UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**NICOLE HOPPER**
    Plaintiff

**v.**	No. 5:10CV-00171-R

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on February 19, 2010, by administrative law judge (ALJ) Mary Lassy. In support of her decision denying Title II and Title XVI benefits, Judge Lassy entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since March 1, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairment: depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual functional capacity to perform a full range of work at all exertional levels and the mental residual functional capacity to understand, remember, and carry out simple and detailed instructions; to sustain attention for extended periods of two hour segments for detailed tasks; to tolerate co-workers and supervisors with occasional public contact; and to adapt to changes as needed.

6. The claimant is capable of performing past relevant work as a nurse assistant and as a mental retardation aide. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Administrative Record (AR), pp. 12-18).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight.

*Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision.  When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision.  *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.  To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.  The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."  A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921.  Only a "slight abnormality which has such a minimal effect

on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## **The Medical Evidence**

The plaintiff has no "severe" physical impairment. She alleges mental disability. On September 23, 2008, she was examined at the request of the Commissioner by Owen T. Nichols, Psy.D. Dr. Nichols' narrative report is at AR, pp. 255-260. The following constitutes a chronological summary of the evidence relevant to the plaintiff's alleged mental disability:

1. According to the ALJ, the plaintiff began treatment with psychiatrist Manuel De La Rocha in September of 2008 (AR, pp. 15 and 313). In a handwritten letter dated September 24, 2008, Dr. De La Rocha opined as follows (AR, p. 264):

> This is a 24 year old mother of three children who was born out of wedlock and immediately adopted. Allegedly, her mother was raped and has no idea who Nicole's father is. Nicole did not finish formal education, she has no working experience, she is supported by the father of her children. Among her problems she mentioned depression, anger, feeling that "I don't fit in," insomnia and a racing mind.
>
> In 2002, she cut her wrist and was hospitalized at WSH [Western State Hospital in Hopkinsville, Kentucky]. After being discharged she attended the local mental health clinic.
>
> Recently, she has been obsessed by the desire to find her father who probably lives in Florida. Patient's mother lives nearby but they don't visit each other. Currently, Nicole is on minor tranquilizers and anti-depressants. She is barely making it with three children, no skills, financial problems and a husband who, according to her, is indifferent. Besides, she comes from a dysfunctional family where practically all members are on disability and receiving psychiatric treatment.

2. On October 3, 2008, in light of Dr. Nichols' findings and the record as a whole, a non-examining state agency psychological consultant (SAPC), Laura Cutler, Ph.D., completed the standard mental residual functional capacity (RFC) assessment form. Dr. Cutler found that the plaintiff is "not significantly" limited in seventeen of twenty functional areas and is

5

"moderately" limited in three areas (AR, pp. 265-266). Dr. Cutler further opined that the plaintiff's anxiety-related disorder does not "precisely satisfy the diagnostic criteria" of the Listing § 12.06, found at Appendix 1 of the regulations (AR, p. 274).

3. On December 8, 2008, another SAPC, Jay Athy, Ph.D., affirmed Dr. Cutler's prior findings in their entirety (AR, pp. 284-302).

4. On February 3, 2009, Dr. De La Rocha made findings to the effect that the plaintiff's mental impairment does, in fact, satisfy Listing § 12.06, to-wit (AR, pp. 314-316):

> *12.06 Anxiety Related Disorders:* In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>     1. Generalized persistent anxiety accompanied by three out of four of
>     the following signs or symptoms:
>     a. Motor tension; or    *Patient unable to relax.*
>     b. Autonomic hyperactivity; or    *(illegible)*
>     c. Apprehensive expectation; or    *Pessimistic.*
>     d. Vigilance and scanning;
> ...
> And
> B. Resulting in at least two of the following:
>     1. Marked restriction of activities of daily living; or
>         *Hardly gets out of the house.*
>     2. Marked difficulties in maintaining social functioning; or
>         *Isolates herself.*
>     3. Marked difficulties in maintaining concentration, persistence, or
>     pace; or
>         *Starts a number of things but finishes only few.*
>     4. Repeated episodes of decompensation, each of extended duration.
>         *At times she practically disappears.*
> Or
> C. Resulting in complete inability to function independently outside the area of one's
> home.    *As above. (illegible)*

5. On February 17, 2009, Dr. De La Rocha completed the same RFC form previously completed by Drs. Cutler and Athy, finding that the plaintiff is "markedly" limited in sixteen of twenty functional areas (AR, pp. 306-307). Dr. De La Rocha's rationale in support of these findings was that "This young woman is extremely handicapped and in my opinion totally and permanently disabled" (AR, p. 308).

6. On or about November 4, 2009, counsel submitted four pages of treatment records from Dr. De La Rocha (AR, pp. 322-325). The notes are mostly illegible. However, counsel asserts that they reflect that the plaintiff was receiving monthly treatment from Dr. De La Rocha (AR pp. 319-320).

7. On December 3, 2009, at the administrative hearing, the plaintiff testified that she sees Dr. De La Rocha on a monthly basis. The vocational expert (VE) testified that the "marked" limitations assigned by Dr. De La Rocha would preclude all work (AR, p. 46).

### **ALJ's Decision**

In her written decision, the ALJ accepted the findings of Drs. Nichols, Cutler, and Athy and rejected those of Dr. De La Rocha for the following reasons (AR, pp. 15-16):

1. The special deference to which treating source medical opinions are entitled is grounded, among other things, in their "detailed, longitudinal picture of your medical impairment(s)." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The applicability of this grounding principle is questionable in the present case because "in September 2008, the claimant began treatment with [Dr. De La Rocha]." Yet as early as his letter dated September 24, 2008, Dr. De La Rocha was opining that the plaintiff is disabled and based upon incorrect assumptions. According to the ALJ, in his letter, "Dr. De La Rocha incorrectly reported the claimant 'did not finish formal education and

7

has no working experience' [AR, p. 264] [whereas in fact] the claimant successfully graduated from high school with no special education placement or grade retentions, has completed some college course work, and has earned certification as a nursing assistant."

    2. The ALJ further observed that Dr. De La Rocha found it noteworthy to report that the claimant was "from a dysfunctional family where practically all members are on disability and receiving psychiatric treatment." Although the ALJ did not say so explicitly, the suggestion is that Dr. De La Rocha's opinion of disability was more akin to an opinion of likely lack of motivation to work than a genuine medical opinion. According to the ALJ, the plaintiff "has held numerous jobs but she has never been fired; she simply quits a job when it 'gets on her nerves.' The evidence does not show any limitations that would prevent the claimant from performing a job that she is willing to perform."

    3. A treating source "medical opinion" is entitled to controlling weight under certain circumstances. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Dr. De La Rocha based his opinion of disabling "marked" restrictions upon a conclusory opinion that "This young woman is extremely handicapped and in my opinion totally and permanently disabled" (AR, p. 308). According to the ALJ, "Initially, pursuant to SSR 96-5p, the undersigned notes that whether a claimant is 'disabled' for purposes of disability benefits is not a medical opinion but rather is a statement of administrative finding which is reserved to the Commissioner." Hence, Dr. De La Rocha's "marked" findings are not genuine medical opinions.

    4. The so-called "treating physician" rule states that a treating source medical opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your

8

case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Even if the "treating physician" rule is applicable in this case notwithstanding Dr. De La Rocha's precipitous, inaccurate, and conclusory assertions and even if his opinions qualify as genuine "medical opinions," they are not entitled to controlling weight because they are not "supported by any legible treatment notes and [are] inconsistent with the assessment by Dr. Nichols and with the claimant's own testimony regarding her daily activities, education, and work history. ... [T]he evidentiary record of Dr. De La Rocha's handwritten treatment notes is not only sparse but also illegible."

**Findings and Conclusions**

The magistrate judge concludes that the ALJ identified a substantial basis for declining to defer to the disabling opinions of Dr. De La Rocha. Stated somewhat differently, the ALJ identified "good reasons" in her written decision for the weight she gave to the treating source's opinion as required by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) and further refined in *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004).

The undersigned further concludes that the state agency medical opinions were not "stale" in any important sense, thereby, rendering the ALJ's reliance upon them not a "good reason" as contemplated by *Blakley v. Commissioner*, 581 F.3d 399 (6th Cir., 2009). In Social Security disability claims, the medical evidence supporting the claim typically continues to be developed after the state agency opinions and up to the date of the ALJ's decision and even beyond. Hence, the court observed in *Morgan v. Astrue*, 2010 WL 3723992 (E.D.Tenn.) as follows:

> Frequently, new evidence about the claimant's condition will come to light during the intervening period of time. The SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided. Although ALJs are not to play doctor, they are not required to filter every piece of objective medical evidence in a claimant's record through a DDS or other physician before they may

9

consider it. An ALJ is permitted to use his expertise and common sense to determine whether objective medical evidence that became part of a claimant's record after a medical opinion was rendered is inconsistent with the opinion to such a degree that the opinion is no longer reliable.

Stated somewhat differently, ALJ's are called upon to determine whether the later evidence is material, i.e., there is a reasonable likelihood that, if the state agency sources had been aware of the subsequent treatment records and opinions, they would have opined disabling, or at least, significantly greater restrictions. In this case, Drs. Nichols, Cutler, and Athy were well aware of the substance of the plaintiff's claim of mental disability, and the plaintiff has presented no evidence to support the proposition that Dr. De La Rocha's opinions would have changed their minds. The magistrate judge concludes that the ALJ's RFC finding was supported by probative medical and non-medical evidence.

Next, the plaintiff argues that, in light of Dr. De La Rocha's findings that would satisfy Listing § 12.06 if accepted, the ALJ was required to obtain an updated medical opinion on the issue of meeting or equaling the Listing. As noted above, the SAPC's opined that the plaintiff's anxiety-related disorder (Listing § 12.06) does not "precisely satisfy the diagnostic criteria" of the Listing (AR, pp. 274 and 289). According to SSR 96-6p, an updated opinion is necessary in the following circumstances:

> [I]n the opinion of the administrative law judge ... the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable [and] additional medical evidence is received that in the opinion of the administrative law judge ... may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

The magistrate judge submits the foregoing is yet another example of the ALJ being called upon to make a "materiality" determination. There is no reason to suppose that the SAPC's would have

changed their minds in light of Dr. De La Rocha's assertions that "patient unable to relax ... pessimistic ... hardly gets out of the house ... isolates herself ... starts a number of things but finishes only few ... at times she practically disappears" (AR, pp. 314-316). Hence, there was no reason to obtain an updated medical opinion.

Next, the plaintiff argues that rather than rejecting Dr. De La Rocha's opinions due to illegible treatment notes, the plaintiff should have recontacted him for clarification. An ALJ is obliged to recontact a medical source only when the evidence received is "inadequate for us to determine whether you are disabled." 20 C.F.R. §§ 404.1512(e) and 416.912(e). SSR 96-5p further provides that an ALJ should recontact a medical source if "[1] the evidence does not support a treating source's opinion [and] [2] the adjudicator cannot ascertain the basis of the opinion from the record." The magistrate judge concludes that the ALJ was not required to recontact Dr. De La Rocha because the ALJ had sufficient evidence to conclude that the plaintiff is not disabled and that the bases of Dr. De La Rocha's opinions were precipitous, inaccurate, and conclusory. See also *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir., 2010) (the ALJ did not simply "throw up his hands" rather than recontact the treating psychiatrist for clarification of her "handwritten and only partially legible" notes).

Finally, the plaintiff attempts to rely upon raw general assessment of functioning (GAF) scores in support of her claim of a disabling mental impairment. As a preliminary matter, the magistrate judge notes that on April 3, 2008, a clinical psychologist at the Pennyroyal Center in Hopkinsville, Kentucky, Angela Rogers, Psy.D., found that the plaintiff had a current GAF of 52 (AR, p. 253). According to Diagnostic and Statistical Manual of Mental Disorders (DSM)-IV, a GAF score from 51 to 60 indicates only "moderate" symptoms. However, and more fundamentally,

11

the Sixth Circuit has held that GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).